

FILED
2022 Jul-08  PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIANNA MAE FROMAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:22-cv-00110-AKK** |
| | ) | |
| **COOPERSURGICAL, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Brianna Mae and Christopher Froman bring this personal injury suit against four medical device companies – The Cooper Companies, Inc., and its subsidiary Coopersurgical, Inc., and Utah Medical Products, Inc., and its subsidiary Femcare, LTD.  Allegedly, these defendants manufactured, marketed, and distributed Filshie clips, a type of medical device that injured Brianna Mae Froman.  *See* doc. 1.  The plaintiffs plead a variety of product liability, negligence, and consumer protection claims, *id.*, and the Cooper Companies, Utah Medical Products, and Coopersurgical now move to dismiss all claims against them.  *See* docs. 16, 18, 20.  For the reasons that follow, the Fromans' claims against Utah Medical Products and The Cooper Companies are due to be dismissed entirely for lack of personal jurisdiction, and the Fromans must replead their allegations against CooperSurgical.

**I.**[1]

Filshie clips are silicone-lined titanium medical devices that are attached to a person's fallopian tubes during a tubal ligation procedure.  Doc. 1 at 5.  Femcare obtained conditional premarket approval from the Food and Drug Administration for the manufacturing and commercial distribution of the Filshie clip within the United States in 1996.  *Id*.  The clips work by exerting continuous pressure on the fallopian tubes, eventually blocking them and acting as a form of long-term birth control.  *Id*.  The Filshie clip is designed to remain permanently attached to the fallopian tube.  *Id.*

**A.**

In 2013, Brianna Mae Froman underwent a tubal ligation procedure using Filshie clips.  *Id*. at 12.  CooperSurgical, Femcare, and UMP allegedly designed, manufactured, sold the Filshie clips and related equipment used in Froman's procedure.  *Id*. at 7.  According to Froman, she received pre-procedure disclosure and consent information related to the "generic risks and hazards . . . associated with the ligation procedure itself."  *Id*. at 12.  However, her doctors did not mention any risk of Filshie clip migration "and the appurtenant damages that could be caused."  *Id.*

---

[1] In considering the motions to dismiss, the court accepts the Fromans' pleaded factual allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

In the years after her procedure, Froman experienced a variety of adverse symptoms purportedly caused by the Filshie clips. *Id*. Then, in early 2020, Froman presented at an emergency room with extreme pain in her lower abdomen. *Id*. at 13. Doctors discovered that the Filshie clips had migrated to the top of Froman's abdominal cavity, damaging blood vessels in her uterus along the way. *Id*. A surgeon removed the clips and Froman's pain "has since substantially subsided," but "the damage caused by the migrating Filshie clips persists and [Froman] continues to experience side effects from the damaged blood vessels." *Id*.

## B.

Allegedly, this complication was not an anomaly. *Id*. at 7-14. Indeed, the plaintiffs allege that Filshie clips migrate in over twenty-five percent of patients, often requiring surgical intervention. *Id*. But despite this high rate, the defendants[2] "neither warned nor adequately informed [the Fromans] nor their healthcare providers how frequently these migrations occur or the severity and permanency of the potential injuries." *Id*. The defendants allegedly failed to provide any warning "even though [they] had received adverse reports and knew or should have known Filshie clips had a significant propensity to migrate." *Id*. In fact, the plaintiffs allege

---

[2] The court uses the generic term "defendants" to remain consistent with the pleadings, but, notably, other than in the listing of the parties and in the case heading, The Cooper Companies is not mentioned a single time in the complaint. *See* doc. 1. Given the lack of any factual allegations connecting The Cooper Companies to any alleged wrongdoing, the court assumes that the Fromans use this term to refer only to defendants CooperSurgical, Femcare, and UMP and therefore also uses it to refer to these three defendants only.

that Femcare listed the Filshie clips' migration rate at 0.13% in its application for pre-market approval even though "the risk of migration was significantly higher [than 0.13%] and continued to increase from year to year." *Id*. Still, the defendants "failed to address the Filshie [clips'] safety issues, even though adverse event reports did or should have alerted them to a product defect causing the device to cause injuries." *Id*. The defendants also allegedly failed to report these adverse events to the FDA and to update their marketing materials to reflect the actual risk of clip migration. *Id*. And the defendants allegedly breached their duty to continually monitor and test their product to ensure its safety and to adequately warn consumers of the dangers inherent in the use of Filshie clips. *Id*.

## C.

The Fromans claim that these failures, along with the defendants' related breach of various duties imposed on manufacturers and distributors of medical devices, caused Ms. Froman's injuries. *Id*. at 13-30. As a result, the Fromans plead claims against all four defendants for: (1) design defect; (2) manufacturing defect; (3) failure to warn; (4) strict liability; (5) negligence; (6) "violation of consumer protection laws;" (7) gross negligence; and (8) punitive damages. *Id*. Three of the

defendants, the Cooper Companies, Coopersurgical, and UMP, have moved to dismiss each of these claims. *See* docs. 16-21. The motions are ripe for resolution.[3,4]

## II.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, plaintiffs need not plead "detailed factual allegations" fully outlining the merits of their case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Additionally, to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff's complaint must "allege sufficient facts to make out a *prima facie* case of jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the

---

[3] The Fromans moved to file excess pages in response to Utah Medical Products' and The Cooper Companies' motions to dismiss. *See* docs. 26, 27. Without waiting for a ruling, however, the plaintiffs filed their responses, *see* docs. 29, 30, which both exceeded the court's limit of fifteen pages for motion to dismiss briefing, *see* doc. 24 at 6. The plaintiffs argue that they needed these excess pages, in part, because the defendants exceeded the page limits in their motions to dismiss with the court's permission. *See* docs. 26 at 2; 27 at 2. This contention is incorrect; although Utah Medical Products and The Cooper Companies moved for excess pages, *see* docs. 14, 15, each submitted their brief in conformance with the applicable page limits, *see* docs. 17, 19, and the court then denied the motions to exceed as moot, *see* doc. 23. Still, because the motions, docs. 26, 27, are unopposed, the court will grant them and will consider the excess pages in ruling on the motions to dismiss.

[4] The plaintiffs also moved for leave to file a surreply. *See* doc. 34. Since the defendants did not oppose this request, the motion, doc. 34, is due to be granted.

defendant challenges jurisdiction through affidavits, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.*; *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### III.

The Cooper Companies and UMP move for dismissal on largely identical grounds, arguing that neither company is subject to this court's personal jurisdiction and, alternatively, that the Fromans' claims are preempted by federal law. *See* docs. 16-19. For its part, CooperSurgical challenges the complaint on preemption and "shotgun pleading" grounds. *See* docs. 20-21. The court first addresses the issue of personal jurisdiction and then turns to CooperSurgical's motion.

### A.

"A federal court sitting in diversity may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Because Alabama's long-arm statute confers jurisdiction to Alabama courts to the extent such jurisdiction is constitutionally permissible, these two requirements collapse into one. *Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992). Specific personal jurisdiction[5] comports

---

[5] The plaintiffs do not contend that TCC and UMP are subject to general personal jurisdiction in Alabama. *See generally* docs. 29, 30.

with due process if the "non-resident defendant ha[s] certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002). To satisfy this requirement, the plaintiff bears the burden of establishing that: "(1) [her] claims arise out of or relate to at least one of the defendant's contacts with the forum; [and] (2) [] the nonresident defendant purposefully availed [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal citations omitted). Stated differently, because "[t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident unless [its] contact with the state is such that [it] has fair warning that [it] may be subject to suit there," the plaintiff must show that the nonresident defendant "purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) (internal citations omitted).

### 1.

The Fromans plead that the four defendants "purposefully availed themselves of the privilege of conducting business in [] Alabama and established minimum contacts sufficient to confer jurisdiction over these Defendants, and the assumption

of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process." Doc. 1 at 3-4.  Other than this boilerplate language, however, the Fromans plead no basis at all for personal jurisdiction over TCC.  *See generally* doc. 1.  In fact, the Fromans do not mention TCC in any of their pleaded factual content and explicitly omit TCC from their listing of the defendants that distributed products in Alabama and had a hand in the specific Filshie clips that caused Froman's injuries.  *See id*. at 4, 7.  Since "vague and conclusory allegations" about a defendant's contacts with the forum "are insufficient to establish a *prima* facie case of personal jurisdiction," *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006), the Fromans have failed to meet their burden of pleading a basis for jurisdiction over TCC.

As for UMP, the Fromans allege that "CooperSurgical, Femcare, [] and Utah Medical Products sell their products and intend that they be used by medical professionals treating patients in Alabama," and that these three defendants, "singularly and in combination, designed, manufactured, sold and distributed Filshie Clips and related equipment utilized in [Froman's] tubal ligation."  Doc. 1 at 4, 7. These allegations successfully shift the burden to UMP to submit affidavits contradicting the Fromans' stated bases for jurisdiction.  *See Stubbs*, 447 F.3d at 1360.  UMP did just that; its chairman and CEO avers that UMP "did not develop, manufacture, or market the Filshie clips allegedly used in [] Froman's tubal ligation

8

in October 2013," and indeed "did not sell or market [] Filshie Clips in Alabama or elsewhere" prior to February 2019. Doc. 17-1 at 1-3. The burden then shifts back to the Fromans "to produce evidence supporting personal jurisdiction" over UMP. *Stubbs*, 447 F.3d at 1360.

To meet their burden, the Fromans cite to specific language in UMP's affidavit, which they construe as admitting a basis for jurisdiction: "in his carefully worded affidavit, it appears that [UMP's] CEO implied that [UMP] (1) currently sells, markets, and distributes Filshie clips in Alabama; and (2) has done so since February 2019." Doc. 30 at 14 (emphasis omitted). Basically, although they do not claim that UMP made the specific clips at issue here, the Fromans argue nonetheless that had UMP adequately warned Alabama consumers about the alleged frequency of migrating Filshie clips when it began marketing the clips in February 2019, Froman and her physicians might have discovered the cause of her pain sooner. *Id.* at 14-16. Thus, "[b]ecause it appears that [UMP] purposefully avails itself of the privilege of conducting activities in Alabama by currently marketing, selling, and distributing the Filshie Clip system in Alabama, the *very same product* that is at issue in this litigation, it subjected itself to the personal jurisdiction of this [c]ourt." *Id.* at 14 (emphasis in original).

At bottom, the Fromans are suggesting that when a company begins marketing and distributing a product in a particular forum, it automatically subjects itself to

personal jurisdiction for any suit relating to an identical product made by a competitor in that forum.  This is so, the Fromans maintain, even where the allegedly faulty product that caused the plaintiff's injuries was manufactured, distributed, and, in this case, implanted in the plaintiff long before the defendant company began doing business in the forum state.

This argument for jurisdiction over UMP falls short.  To begin, the Fromans provide no legal authority supporting this type of significantly-broadened jurisdictional analysis.  Moreover, their argument entirely disregards the due process clause's "fair warning requirement," which is only satisfied "if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that *arise out of or relate to those activities*."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (emphasis added).  The court is thus unconvinced that UMP "should reasonably anticipate being haled into [Alabama] court" for a malfunctioning medical device that UMP itself had nothing to do with.  *See id*. at 474.  Accordingly, the Fromans have not shown "a sufficient nexus between [UMP's] contacts [with Alabama] and the litigation" to render the exercise of specific personal jurisdiction over UMP here constitutionally permissible.  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

**2.**

Alternatively, the Fromans contend that this court has jurisdiction over both UMP and TCC as "alter egos" of Femcare and Coopersurgical.  *See* docs. 29 at 13-19; 30 at 16-22.  As this court has explained previously:

> The Eleventh Circuit recognizes that personal jurisdiction may be based on an alter-ego theory when a subsidiary's "separate corporate status is formal only" and has no "semblance of individual identity."  *Meier*, 288 F.3d at 1272; *see also Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000).  However, courts do not exercise the power to pierce the corporate veil lightly.  *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1304 (S.D. Ala. 2012) (citing *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273 (Ala. Civ. App. 2001)).  And, "courts are reluctant to impute the activities of the subsidiary to the parent when some semblance of independence has been maintained."  *Kozial v. Bombarider-Rotax GMBH*, 129 F. App'x 543, 547 (11th Cir. 2005) (citing *Consolidated Dev. Corp.*, 216 F.3d at 1293-94).

*Thornton v. Bayerische Motoren Werke AG,* 439 F. Supp. 3d 1303, 1312 (N.D. Ala. 2020).  Importantly, "mere control and dominion does not suffice to trigger alter ego status, . . . [and] Alabama law is clear that the corporate veil cannot be pierced unless the dominant corporation (a) misused that control, and (b) proximately caused harm to the plaintiff through such misuse."  *Id*. at 1312-13 (internal citations omitted).

The Fromans maintain that UMP and TCC exercise complete control over Femcare and Coopersurgical respectively, citing various public statements connecting the companies with their subsidiaries and attaching several documents showing the interwoven nature of the companies' leadership structures.  *See* docs.

29 at 13-19; 30 at 18-22.  But showing the purported requisite level of control is only part of the inquiry.  Absent from both the complaint and the Fromans' subsequent briefing is any claim that either UMP or TCC misused its control of Femcare or Coopersurgical such that piercing the corporate veil is appropriate under Alabama law.  And because the Fromans "[have] not alleged, much less shown, that [either UMP or TCC] misused its control over [Femcare or Coopersurgical], that such misuse of control harmed [the Fromans], or that any injustice or inequitable consequences ensued," their alter-ego theory of personal jurisdiction fails.  *Cont'l Motors*, 882 F. Supp. 2d at 1304-05; *see also Thornton*, 439 F. Supp. 3d at 1312-13.

* * * * * * *

To close, the court will dismiss the claims against UMP and TCC for lack of personal jurisdiction and will not reach the merits of these defendants' federal preemption-related arguments.[6]

---

[6] The Fromans, in passing, ask the court for leave to conduct limited jurisdictional discovery.  *See* docs. 29 at 20-21; 30 at 22-23.  The court declines this request.  For one, the Fromans "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in [their] briefs as a proposed alternative to dismissing [UMP and TCC] on the state of the current record."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009).  Also, the plaintiffs seek jurisdictional discovery primarily related to how much control UMP and TCC have over Femcare and Coopersurgical respectively.  *See* docs. 29 at 20-21; 30 at 22-23.  As outlined previously, however, UMP and TCC's alleged level of control over their subsidiaries is only part of the analysis.  And since the Fromans do not explain how limited jurisdictional discovery would aid them in establishing a basis for piercing the corporate veil by showing the requisite misuse of corporate control, their requests for such discovery are denied.

**B.**

The court turns next to CooperSurgical's motion to dismiss on preemption and shotgun pleading grounds. *See* docs. 20, 21.

**1.**

Under the Medical Device Amendments, the FDA has regulatory authority over medical devices intended for human use. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1325 (11th Cir. 2017) (citing 21 U.S.C. § 360c *et seq*.). Filshie clips are classified by the FDA as Class III medical devices, *see* docs. 1 at 5-6; 21 at 4-5, and must undergo an extensive premarket approval process before entering the marketplace in the United States, *see id*.; *Mink*, 860 F.3d at 1325. "Once a device has been approved, a manufacturer may not make any change to the device that could affect its safety or effectiveness unless that change gets additional approval from the FDA." *Godelia v. Doe 1*, 881 F.3d 1309, 1317 (11th Cir. 2018).

Relevant here, the MDA preempts two categories of state-law claims. *Id*. "The express preemption provision bars any claim based on a state law requirement 'which is different from, or in addition to, any requirement' under the MDA that 'relates to the safety or effectiveness of the device' or any other MDA requirement." *Id*. (quoting 21 U.S.C. § 360k(a)). The MDA's implied preemption provision bars claims "that merely attempt to enforce duties owed to the FDA, so-called 'fraud-on-the-FDA claims.'" *Id*. (citing 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal*

13

*Comm.*, 531 U.S. 341, 348 (2001)).   As this Circuit has recognized, "[t]aken together, these two types of preemption leave a narrow gap through which plaintiffs making medical device claims must proceed." *Id*. (internal citation omitted).   "To make it through, a plaintiff has to sue for conduct that violates a federal requirement (avoiding express preemption), but cannot sue only because the conduct violated that federal requirement (avoiding implied preemption)." *Mink*, 860 F.3d at 1327.

**a.**

The Fromans' first six causes of action – design defect, manufacturing defect, failure to warn, strict liability, negligence, and "violation of consumer protection laws" – are premised on the defendants' alleged failure to report incidents of migrating Filshie clips to the FDA. *See* doc. 1 at 15-29.  The Fromans are quite clear on this point: "The knowledge Defendants have regarding the migration issues involved with the Filshie Clip Systems [] imposed parallel duties on the Defendants pursuant to the Food, Drug, and Cosmetic Act (FDCA) to accurately report and update the FDA of the same," and "if Defendants had timely disclosed the propensity and severity of risks associated with use of the Filshie Clips, Plaintiffs' injuries could have been avoided." *Id*. at 12.  In fact, with one exception, each of these claims follows the exact same pleading framework: "Defendants had a duty to [insert alleged basis for state-law tort claim].  This duty parallels the FDCA's requirement for truthfully and completely reporting incidents of adverse events, and if necessary,

obtaining approval for changes in the design, manufacture, and warnings/marketing

approved by the FDA." *See id*. at 15-29. [7]

Critically, the "FDCA's requirement for truthfully and completely reporting

incidents of adverse events" is a duty that medical device companies owe to the FDA

instead of to consumers.  Consequently, all claims premised on the breach of this

duty are squarely barred by the MDA's implied preemption provision.  As the

Eleventh Circuit explained in analyzing a nearly identical claim:

> Mink's theory relies on his allegation that [the device manufacturer]
> "failed to adequately investigate adverse events and complaints and
> failed to properly report these issues to the FDA." Because this theory
> of liability is based on a duty to file a report with the FDA, it is very
> much like the "fraud-on-the FDA" claim the Supreme Court held was
> impliedly preempted in *Buckman*. In both cases, a plaintiff alleged a
> manufacturer failed to tell the FDA those things required by federal
> law. And here, like *Buckman*, we conclude that federal law preempts
> these claims insofar as [the manufacturer's] duty is owed to the FDA.

*Mink*, 860 F.3d at 1330.  So too here are the Fromans' first six claims preempted.

The Fromans protest that they "carefully plead[ed] their claims so they do not

rest on violation of duties the Defendants owed only to the FDA," and that

*Buckman*'s implied preemption holding is "not nearly broad enough to encompass

Plaintiffs' claims."  Doc. 34-1 at 6.  But the Court in *Buckman* was explicit in holding

---

[7] The Fromans' design defect claim is worded only slightly differently: "the increased incidence of migration reported since 1996 was not reported to the FDA; a continued duty and requirement after obtaining PMA. Such failure allowed for the defective design to remain the same."  Doc. 1 at 15-16.

that a plaintiff's claims are preempted where they are based on the theory that a defendant caused her injuries by failing to make accurate representations to the FDA. *See Buckman*, 531 U.S. at 343.  The court thus discerns no basis for distinguishing the Fromans' first six claims from those found implicitly preempted in *Buckman* and *Mink*.

### b.

Regardless, all of the Fromans' claims – including the final two claims for gross negligence and punitive damages – are expressly preempted as currently pleaded.  Other than the Fromans' repeated references to "the FDCA's requirement for truthfully and completely reporting incidents of adverse events," they do not identify a single federal regulation that CooperSurgical allegedly violated.  *See generally* doc. 1.  Instead, they broadly allege that the FDA reporting requirement parallels a huge swath of state-law tort claims, and cursorily maintain that those tort claims are accordingly not preempted.  *Id*. at 12, 15-29.

Such unsupported asseverations of parallelism are insufficient to overcome the MDA's express preemption provision.  Where a plaintiff "fail[s] to allege facts in their complaint demonstrating the presence of the elements of a parallel claim," such as by failing to "set forth any specific [] failure to comply with any FDA regulation that can be linked to the injury alleged," her claims are expressly preempted.  *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301-02 (11th Cir.

2011) (internal citations omitted).  To be sure, a plaintiff can avoid this bar by "plead[ing] specific violations of federal regulations" or by "point[ing] to device-specific federal requirements" that the device manufacturer allegedly violated, such as "the premarket approval specifications for the device [or] a number of other specific federal regulations." *Godelia*, 881 F.3d at 1319-20; *Mink*, 860 F.3d at 1331 (internal citations omitted).  But the Fromans' pleading does neither, and instead refers only generally to the defendants' alleged duty to report to the FDA.  Breach of an alleged duty owed to the FDA, however, cannot form the basis for a private cause of action, and the Fromans' claims are therefore expressly preempted.

## 2.

The Fromans' complaint is also an impermissible shotgun pleading.  Federal Rules of Civil Procedure 8(a) and 10(c) require a plaintiff "to present [her] claims discretely and succinctly, so that, [her] adversary can discern what [she] is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 (11th Cir. 1985) (Tjoflat, J., dissenting).  Complaints that fail to meet these requirements "are often disparagingly referred to as 'shotgun pleadings,'" and the Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." *Weiland v. Palm*

17

*Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320-21 (11th Cir. 2015).  Relevant here, "[t]he most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id*. at 1321.  This categorical re-alleging of all preceding counts is a "mortal sin" – and provides grounds for dismissal – where the plaintiff's "failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."  *Id*. at 1322-24.

The Fromans' complaint suffers from precisely this flaw.  Each of their eight claims for relief begins with the same recitation: "All of the allegations contained in the previous paragraphs are alleged herein."  *See* doc. 1 at 15-29.  This approach "lead[s] to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions," *Weiland*, 792 F.3d at 1324 (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)), and results in an exceedingly cumbersome complaint, which, in turn, hinders the court's ability to engage in a meaningful analysis of the Fromans' claims and the specific conduct underlying each claim.  Put differently, the Fromans' causes of action are neither clear nor "informative enough to permit

[the] court to readily determine if they state a claim upon which relief can be granted." *Id.* at 1326.

* * * * * * *

In lieu of dismissing the claims against CooperSurgical at this stage, however, the court will give the Fromans the opportunity to file an amended complaint correcting the preemption- and shotgun pleading-related deficiencies described above. The amended complaint must, for each claim: (1) identify the specific federal regulation(s) CooperSurgical and Femcare allegedly violated that form(s) the basis for each claim asserted; (2) clearly and succinctly describe the corresponding state-law tort claim; and (3) describe specifically how the two underlying duties are parallel.[8] And to bring their pleading into compliance with Rules 8(a) and 10(c), the Fromans must pare down their factual allegations and claims for relief to ensure that each count references only CooperSurgical's and Femcare's specific alleged conduct that forms the basis for that particular claim.

## IV.

To close, the court does not have personal jurisdiction over The Cooper Companies or Utah Medical Products, and their motions to dismiss, docs. 16, 18, are

---

[8] The court is "mindful that [the Fromans] would not likely have an opportunity to access documents describing all of the [Filshie clip]-specific regulatory requirements without discovery," *Godelia*, 881 F.3d at 1321, but in their amended complaint, the Fromans still must plead their claims with significantly more specificity to survive dismissal.

due to be granted.   Also, as currently pleaded, the Fromans' claims against CooperSurgical violate federal pleading requirements and appear to be preempted. But because the court must "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), in lieu of dismissal, the court will give the Fromans until July 25, 2022, to cure the deficiencies in their complaint.   If the Fromans fail to do so, or if their amended complaint continues to suffer from these same flaws, CooperSurgical is free to renew its motion.   For now, CooperSurgical's motion to dismiss, doc. 20, is due to be denied.   A separate order effectuating this opinion will be entered.

      **DONE** the 8th day of July, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
